COPY

Filed 3/19/15  P. v. Williams CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RANDEE DEMAR WILLIAMS,<br><br>        Defendant and Appellant. | A139392<br><br>(Solano County<br>Super. Ct. No. VCR216462) |

### INTRODUCTION

A jury convicted defendant Randee Williams of possession of a firearm by a felon. (Pen. Code, § 29800, subd. (a)(1).)[1] The principal witness against defendant was his next-door neighbor. Defendant contends the trial court committed reversible error by excluding defense evidence offered to impeach the neighbor's testimony by suggesting the shots he heard could have come from somewhere other than defendant's backyard. We affirm.

### STATEMENT OF THE CASE

Defendant was charged by information in Solano County with murder (count 1) and possession of a firearm by a felon on November 25, 2012 (count 2); and possession of a firearm by a felon between August 1 and September 30, 2012 (count 3). (§§ 187, subd. (a), 29800, subd. (a)(1).) The information also alleged a firearm use allegation, a

---

[1] All further unspecified statutory references are to the Penal Code.

prior serious felony conviction, a prior strike conviction and a prior prison term. (§§ 12022.5, subd. (a)(1), 12022.53, subds. (b)-(d), 667, subds. (a)(1), (b)-(i)/1170.12, subds. (a)-(d), 667.5, subd. (b).)

A jury acquitted defendant of counts 1 and 2 and convicted him of count 3. Defendant admitted the prior conviction and prior prison term. The trial court sentenced defendant to seven years in prison, and defendant timely appeals.

### STATEMENT OF FACTS[2]

James Manor lived with his wife and young son at 1082 Thelma Avenue in Vallejo, next door to defendant. A four-foot fence divided Manor's backyard from defendant's backyard. The night before his son's first day of kindergarten, around 7:00 or 7:30 as it was getting dark, Manor heard five or six gunshots. Manor knew the incident occurred in late August or early September because "they start [school] a little earlier [in] Vallejo." Manor was in the living room, at the front of the house, when he heard the shots. His wife and son were in the back bedroom, which adjoins the backyard. Manor ran down the hallway to the back of the house to investigate. After telling his wife to get down on the floor, Manor walked out into the backyard through the sliding glass door in the bedroom. He saw defendant's son sitting in a chair in defendant's backyard. Defendant was standing in the sliding glass doorway. Manor said to defendant, "What the hell is going on? [Y]ou can't be doing that here." Defendant responded, "[M]y mother has been gone for 20 years." He also said he was the shooter. Manor left it at that and went back into the house. Manor did not have his hearing aid on because did not need one for conversation unless "it goes into women and children's voices. I hear low tones. I have high pitch loss." He was already looking for a new place to live, but the incident "just made it that much more of an emergency to get out of the neighborhood." Asked by

---

[2] We summarize only the facts relevant to count 3, and omit the facts underlying counts 1 and 2, of which defendant was acquitted, that are not relevant to our later discussion of defendant's claim of error.

2

defense counsel about the location of the Blue Rock Springs Bar relative to defendant's house, Manor testified: "[T]here is a doctor's office and everything right on the side of Randee's house. And then the next business over, there is like an apartment on top and a bar below and a barber shop." He did not report the incident to the police at the time because he did not want any possible retaliation, and he did not think it was necessary.

On November 25, 2012, while serving a search warrant at defendant's house in connection with the investigation of the shooting death of Gary White that same day, Vallejo Detective Sean Kenney spoke to defendant's neighbor at 1082 Thelma. As a result of information he received from the neighbor about gunshots coming from defendant's backyard, Detective Kenney secured a second search warrant for defendant's residence, which was served December 4, 2012. Police recovered two spent shell casings from defendant's backyard , ammunition for a .40 caliber gun from the shed, and a torn shooting target from the kitchen table.

Allison Williams, defendant's girlfriend, had lived with him for four or five years, until his arrest in November 2012. She was the registered owner of a .40-caliber Smith & Wesson pistol. She used to keep the gun in the house, but about a week before the homicide, she moved the gun to her car because she did not want defendant to find it. She was supposed to get rid of the weapon because he did not want it in the  house anymore, "especially since [defendant's son] Nigel was there." Nigel had moved into the house with them "[t]he first couple days of August." Allison kept the ammunition for the gun in a shed in the backyard. Defendant knew Allison kept the gun in the house. Allison did not know how the shell casings got into the backyard. She never heard gunshots coming from her backyard, but she had heard them coming from close by, near the Blue Rock Bar.

## DISCUSSION

Defendant contends the trial court's exclusion of testimony to establish that gun shots were frequent in the area of defendant's house, on the ground the testimony was not tethered to the time period encompassed by count 3, was error that violated his federal constitutional right to present a defense. We disagree.

Defense counsel proffered the testimony of two witnesses. One witness was the owner of a Quick Stop store. According to defense counsel's offer of proof, the store owner told the defense investigator "he only heard shots fired at least four or five times in about a year. He says that between May of 2012 and through this past May [2013], these shots were fired in the evening hours. He says it has been dark. [T]oward the end of the year, he mentioned an incident at the Blue Rock Bar where shots had been fired. He would include those shots as the total of four to five shots he's heard in the past."

The other witness is a bartender at the Blue Rock Bar. The court summarized her statement to the defense investigator as follows: "Working at the bar 12 years [sometime] toward the end of 2012. Talking about the funeral. Daylight. Argument in the bar. People left. Someone shot in front of the bar. She's worked there 10 years. She's heard shots occurring all hours of the day. It's not unusual for this area. That is what I have." Defense counsel also offered the bartender's mother, who owned the bar, was familiar with the area and could testify that gunshots were common.

The court excluded the proposed testimony after reviewing a transcript of James Manor's testimony. The court ruled: "[T]he fact, that there are gunshots in Vallejo is not relevant to the issue in Count 3. [¶] In the Court's opinion and under 352, I'm going to exclude it. And I do that based on the evidence at this point. Not on late discovery. If I felt that it was relevant to the charge, I think it comes in. [¶] . . . [¶] . . . I guess it would be relevant if the shots were fired on the same night. I have no evidence before me right now that any of that happened near or at that time. I have the end of 2000—I have evidence that shots were fired into the Blue Rock Bar sometime after a funeral, is what I

4

have.  [¶]  I have no evidence that it happened near the time when the incident that Mr. Manor talks about.  Mr. Manor said it happened.  He went in the back.  The defendant admitted it.  He left it at that.  The casings are in the backyard.  The target is there.  The fact that shootings occurred next door at some time.  [¶]  I mean, I'll give you an example.  Let's say there is a police report that was sometime in the general time period of this.  I would gather, if a bar were shot up maybe there would be a police report.  And that would tell us when it happened.  And if it happened at the end of August beginning of September, then I think that is a step closer.  It's still a bit much.  But if it happened in December or happened in November, then it's not relevant.  We don't know when it happened according to what you provided me."  Defense counsel agreed:  "Right.  That is true with respect to it."

A trial court's evidentiary rulings admitting or excluding evidence are reviewed for abuse of discretion, " ' "and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' "  (*People v. Geier* (2007) 41 Cal.4th 555, 585.)  The twin bases for the trial court's ruling here were lack of relevance and Evidence Code section 352.  " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (Evid. Code, § 210.)  Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  The disputed issue in this case was whether defendant was in constructive possession of a gun between August 1, 2012, and September 30, 2012.  Mr. Manor's testimony narrowed the time frame to the end of August or the beginning of September:  he heard the shots coming from the vicinity of defendant's backyard on the evening before his son's first

5

day of kindergarten, and he knew when Vallejo schools started classes. At best, defendant's proffered testimony tended to show (1) there was a shooting incident at the nearby bar in the latter part of 2012 after a funeral and (2) gunshots were not unusual in Vallejo. The trial court concluded the proffered testimony did not have any tendency in reason to prove the shots were fired from the bar in late August or early September. The court's shorthand reliance on Evidence Code section 352 also suggests any marginal relevance the proffered evidence might have was outweighed by the undue consumption of time it would take to examine and cross-examine two or three witnesses, and by the possibility the evidence could fuel speculation about a red herring. The court's conclusion was not unreasonable, and we perceive no abuse of discretion.[3]

Defendant claims the exclusion of the proffered evidence "withdrew from the jury the factual issue of whether gunshots in the area around the Blue Rock Bar were sufficiently common to create the possibility that Manor, with his hearing impairment, was mistaken concerning whether the shots came from the actions of his next door neighbor, Mr. Williams." The "factual issue" identified by defendant was raised by the evidence. In her cross-examination of Mr. Manor, defense counsel elicited testimony about the close proximity of the Blue Rock Bar. There was also evidence that on November 26, 2012, when defendant was being questioned by the police, he said, "Hey, this bar around the corner, there's bad stuff that happens there all the time. Maybe you all ought to look into that." Defense counsel also brought out the fact of Mr. Manor's hearing impairment. Because the excluded testimony could not show any shots were fired from the bar during the relevant time period, it could not add much to this evidentiary landscape.

---

[3] Inasmuch as we reject defendant's claim of state law error on the merits, we necessarily reject defendant's claim of federal constitutional error. " 'No separate constitutional discussion is required in such cases, and we therefore provide none.' [Citation.]" (*People v. Homick* (2012) 55 Cal.4th 816, 856, fn. 25.)

Assuming error occurred, in our view the error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) When Mr. Manor berated defendant about the gunshots, defendant responded his mother had been dead for 20 years, and then admitted it was him. Even if defendant was covering up for his son in taking the blame for the gunshots, there was ample evidence defendant had constructive possession of the gun. The jury did not have to find he shot the gun to find him guilty of a violation of section 29800. The jury was instructed, "A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it, either personally or through another person." Allison Williams's testimony established she had a gun; she was living with defendant in the house in late August and early September 2012; she kept the gun in the house at that time; she did not move it to her car until November; defendant knew about the gun and had some control over it, inasmuch as Williams moved the gun at his behest. The police found bullet casings in the backyard, ammunition in the shed in the backyard, and a target in the kitchen. In closing argument, defense counsel conceded: "First of all, we know that in Count Two and Count Three that Randee has [a] felony conviction. So being near a gun, being around a gun, seeing a gun, holding a gun, touching a gun and having a gun in your house is a felony." Under these circumstances, it is not reasonably probable a result more favorable to defendant would have been reached if the witnesses had testified to shots fired after a funeral towards the end of the year, or that gunshots at the bar were not uncommon.

**DISPOSITION**

The judgment is affirmed.

7

_____

Dondero, J.

We concur:

_____

Humes, P.J.

_____

Banke, J.

8